UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Esther Caraballo Rivera

    Plaintiff

v.

Plaza Tu Supermercado, Inc.

    Defendant

**CIVIL ACTION**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Esther Caraballo Rivera, individually and on behalf of all other individuals similarly situated, (hereinafter referred to as "Plaintiff") hereby sues the Defendant, **Plaza Tu Supermercado, Inc.** doing business as **Plaza Tu Supermercado** (hereinafter referred to as "Defendant") for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

### JURISDICTION AND VENUE

1.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

2.    Venue is properly located in the District of Puerto Rico because venue lies in the judicial district of the property *situs*. The Defendant's property is located in and does business within this judicial district.

### PARTIES

3.   Plaintiff is a Puerto Rico resident, lives in Bayamon, Puerto Rico, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is severely limited or unable to engage in the major life activity of sitting, standing, and walking. At the time of Plaintiff's visit on or around October 30, 2016 to Defendant's facility and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA. As a result of Plaintiff's limited or inability to engage in the major life activity of sitting, standing, and walking, the Puerto Rico Department of Motor Vehicles issued a *permanent* handicap permit (No. 2260043) to the Plaintiff. The Plaintiff personally visited the Defendant's facility but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within Defendant's facility, even though he would be classified as a "bona fide patron". During this visit, Plaintiff experienced unnecessary difficulty and risk because no purportedly accessible parking space was designated as "accessible" or "van accessible." Based upon an investigation performed on Plaintiff's behalf, Plaintiff has become aware of additional architectural barriers at Defendant's facilities. These additional barriers, which were not directly encountered by Plaintiff but which Plaintiff has knowledge of as a result of the investigation conducted in connection with this case, as detailed in paragraph No. 16 of the complaint. Plaintiff affirmatively claims knowledge of the barriers in question, as required by Disabled Americans for Equal Access, Inc., v. Ferries del Caribe, Inc., 405 F.3d 60 (1st Cir. 2005). Plaintiff has established standing regarding at least one barrier, handicapped parking spaces and thus, he  "may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability." Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1047 (9th Cir. 2008). Plaintiff "need not

necessarily have personally encountered all the barriers that bar his access to the [store] in order to seek an injunction to remove those barriers." <u>Pickern v. Holiday Quality Foods, Inc.</u>, 293 F.3d 1133, 1138 (9th Cir. 2002). Once a plaintiff encounters at least one barrier, he has standing to have all barriers related to his disability removed. <u>Chapman v. Pier 1 Imports (U.S.), Inc.</u>, 631 F.3d 939, 944 (9th Cir. 2011). Allowing all barriers relating to an ADA plaintiff's disability to be brought forth in one action "facilitates ADA compliance by eliminating the piecemeal litigation. . . " <u>Chapman</u>, 631 F.3d. at 953.

4.      Plaintiff will avail herself of the services offered at the facility in the future, provided that the Defendant modify the Premises or modify its' policies and practices to accommodate individuals who use wheelchairs or individuals with limited mobility. Plaintiff frequently travels to the area wherein Defendant operates the subject facility to conduct various activities, including, but not limited to shopping. Plaintiff plans to avail herself of the goods and services offered to the public at the property return on or around February 15, 2016.

5.      Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations. When acting as a "tester," Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least all of those that Plaintiff is able to access; and tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the

premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other subsequent visits, Plaintiff also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein. It is the Plaintiff's belief that said violations will not be corrected without court intervention, and thus the Plaintiff will suffer legal harm and injury in the near future.

6.   Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, leases or leases to is known as **Plaza Tu Supermercado, Inc.** doing business as **Plaza Tu Supermercado,** is located at Carr. 3 Km 140.4 Sector Melania, Guayama, PR (hereinafter "Subject Facility"). Defendant also maintains and controls the Subject Facility.



## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

7.    Plaintiff adopts and re-alleges the allegations stated in paragraph "1" through "6"of this complaint as if fully stated herein.

8.    On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 et. seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant(s) have ten (10) or fewer employees and gross receipts of $500,000 or less. See 42 U.S.C. §12182; 28 C.F.R. §36.508(a).

9.    Congress found, among other things, that:

    a.  some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

    b.  historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

    c.  discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

    d.  individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to

existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and

e.  the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non- productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

10.  Congress explicitly stated that the purpose of the ADA was to:

a.  provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b.  provide, clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

c.  invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

U.S.C. §12101(b)(1)(2) and (4).

11.  Pursuant to 42 U.S.C. §12182(7), 28 CFR §36.104 and the 2010 ADA Standards, Defendant's facility is a place of public accommodation covered by the ADA by the fact it is an establishment which provides services to the general public, and must be in compliance therewith. The building and/or Subject Facility which is a subject of this action is a public accommodation covered by the ADA and which must be in compliance

therewith. As the owner, lessor, lessee, or operator of the Subject Facility, Defendant is required to comply with the ADA. To the extent the property, or portions thereof, existed prior to January 26, 1993 ("pre-existing facility"), the owner, lessor, lessee, or operator has been under a continuing obligation to remove architectural barriers at that property whose removal was readily achievable, as required by 42 U.S.C. Section 12182. To the extent that the property, or portions thereof, were constructed after January 26, 1993 ("newly constructed facility"), the owner, lessor, lessee, or operator was under an obligation to design and construct such facilities such that they are readily accessible to and usable by individuals with disabilities, as required by 42 U.S.C. Section 12183. To the extent that the facility, or portions thereof, were altered in a manner that affects or could affect its usability ("altered facility"), the owner, lessor, lessee, or operator was under an obligation to make such alterations in such a manner that, to the maximum extent feasible, the altered portions are readily accessible to and usable by persons with disabilities. Pursuant to 28 C.F.R. part 36.404, all newly constructed facilities were required to comply with the Standards For New Construction And Alterations, set forth in Appendix A to 28 C.F.R. part 36 ("ADAAG").  Pursuant to 28 C.F.R. part 36.404, all altered facilities were required to comply with the ADAAG to the maximum extent feasible.  Pursuant to 28 C.F.R. part 36.304, all measures taken to comply with barrier removal requirements of 42 U.S.C. Section 12182 must also comply with the ADAAG to the maximum extent feasible. Failure to comply with these requirements constitutes a violation of the ADA.

12.    The Defendant has discriminated and continues to discriminate against the Plaintiff and others who are similarly situated, by denying access to, and full and equal enjoyment of

goods, services, facilities, privileges, advantages and/or accommodations located at the Subject Facility as prohibited by 42 U.S.C. §12182, and 42 U.S.C. §12101 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. §12182(b)(2)(A)(iv).

13.   Plaintiff has visited the Subject Facility, and has been denied full and safe equal access to the facilities and therefore suffered an injury in fact.

14.   Plaintiff intends to return within the next six months provided the defendants modifies the facility to enjoy the goods and/or services at the Subject Facility on a spontaneous, full and equal basis. However, Plaintiff is precluded from doing so by the Defendant's failure and refusal to provide disabled persons with full and equal access to their facilities. Therefore Plaintiff continues to suffer from discrimination and injury due to the architectural barriers which are in violation of the ADA.

15.   Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA See 28 CFR §36 and its successor the 2010 ADA Standards ADA Accessibility guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain **civil penalties of up to $55,000 for the first violation and $110,000 for any subsequent violation**. The Plaintiff reserves his right to file a formal complaint with the U.S. Department of Justice.

16.   The Defendant is in violation of 42 U.S.C. §12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and is discriminating against the Plaintiff as a result of inter alia, the following specific violations:



**SITE ARRIVAL POINTS**

a. This property fails to comply with section with: total number of parking space, ADA Section 208 – Table 208.2. Three *purportedly* accessible parking spaces are provided for this purpose in the front of the supermarket. None are ADA compliant and thus, the minimum number of accessible parking spaces is not met.

| Minimum Number of Accessible Parking Spaces 2010 Standards (208.2) | | |
|---|---|---|
| **Total Number of Parking Spaces Provided in Parking Facility** (per facility) | **(Column A) Minimum Number of Accessible Parking Spaces** (car and van) | **Mininum Number of Van-Accessible Parking Spaces** (1 of six accessible spaces) |
| 1 to 25 | 1 | 1 |
| 26 to 50 | 2 | 1 |
| 51 to 75 | 3 | 1 |
| 76 to 100 | 4 | 1 |
| 101 to 150 | 5 | 1 |
| 151 to 200 | 6 | 1 |
| 201 to 300 | 7 | 2 |
| 301 to 400 | 8 | 2 |
| 401 to 500 | 9 | 2 |
| 500 to 1000 | 2% of total parking provided in each lot or structure | 1/6 of Column A* |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/6 of Column A* |
| *one out of every 6 accessible spaces | | |

9

b. This property fails to comply with: Parking Sign. One ADA compliant parking sign is inexistent. The height was less than 60" min. above finished floor.



c. This property fails to comply with: *Location of accessible parking spaces*. Accessible parking spaces must be located on the shortest accessible route of travel to an accessible facility entrance. Where buildings have multiple accessible entrances with adjacent parking, the accessible parking spaces must be dispersed and located closest to the accessible entrances. When accessible parking spaces are added in an existing parking lot or structure, locate the spaces on the most level ground close to the accessible entrance. An accessible route must always be provided from the accessible parking to the accessible entrance. An accessible route never has curbs or stairs, must be at least 3 feet wide, and has a firm, stable, slip- resistant surface. The slope along the accessible route should not be greater than 1:12 in the direction of travel. Accessible parking spaces may be clustered in one or more facilities if equivalent or greater accessibility is provided in terms of distance from the accessible entrance, parking fees, and convenience. Van-

accessible parking spaces located in parking garages may be clustered on one floor (to accommodate the 98-inch minimum vertical height requirement). One of the main concerns is the access route to the main entrance.

d.  This property fails to comply with: *width of car accessible parking spaces*. Car accessible parking spaces shall be 96 inches wide minimum, marked to define the width, and maximum slope in all directions is 1:48. Boundary of the access aisle must be clearly marked so as to discourage parking in it. It was found that the parking spaces were less than 96 inches and not properly marked with blue logo.

e.  This property fails to comply with: *width of aisle of car accessible parking spaces*. Access aisle width shall be at least 60 inches, must be at the same level and the same length as the adjacent parking space(s) it serves, maximum slope in all directions is 1:48, and access aisle must connect to an accessible route to the building. Ramps must not extend into the access aisle. It was found that the aisle of the parking spaces were less than 60 inches and not properly marked with blue logo. These features are not available at the facility.

f.  The parking areas designated for persons with disabilities should be relocated since there are multiple non-compliances, gradient problems, and changes in surface levels in paved areas in street level are hazardous and no wheel stops are provided.



g. This property fails to comply with: signage of *van accessible parking spaces*. Van-accessible parking spaces incorporate the features of accessible parking spaces on the previous paragraph and require the following additional features: a "van accessible" designation on the sign.  These features are not available at the facility.

h. This property fails to comply with: *van accessible parking space vertical clearance*. Van-accessible parking spaces incorporate the features of accessible parking spaces on the previous paragraph and require the following additional features:  at least 98 inches of vertical clearance for the van parking space. These features are not available at the facility.

i. This property fails to comply with: vehicular route of *van accessible parking spaces*. Van-accessible parking spaces incorporate the features of accessible parking spaces on the previous paragraph and require the following additional features:  vehicular route to and from the van-accessible space. Generally, access

aisles may be located on either side of the parking space except for angled van parking spaces which must have access aisles located on the passenger side of the parking spaces. These features are not available at the facility.

j.  This property fails to comply with: *van accessible parking spaces and aisle*. Van-accessible parking spaces incorporate the features of accessible parking spaces on the previous paragraph and require the following additional features:  Van parking space must be 132 inches wide minimum with an adjacent 60-inch wide minimum access aisle. A van parking space of 96 inches wide minimum with an adjacent 96-inch wide minimum access aisle is also permitted (see below). These features are not available at the facility.



**Vehicle Route**

Van
132"min
3350

60"min
1525

Car
96"min
2440

**Van-Accessible Parking Space with
60-inch Minimum Width Access Aisle**

96"min
2440

96"min
2440

96"min
2440

**Van-Accessible Parking Space with
96-inch Minimum Width Access Aisle**









### A  PARKING SPACES

**NUMBER & LOCATION**
- Where parking spaces are provided, accessible parking spaces must be provided.
- Number of accessible parking spaces must be determined by the Parking Spaces Table.
- Where more than one parking facility is provided on a site, the number of accessible spaces provided on the site must be calculated according to the number of spaces required for each parking facility.
- Where parking spaces are marked with lines, width measurements of parking spaces and access aisles must be made from the centerline of the markings.
- Hospital Outpatient Facilities: 10% of patient and visitor parking spaces provided to serve hospital outpatient facilities must be accessible.
- Rehabilitation Facilities and Outpatient Physical Therapy Facilities: 20% of patient and visitor parking spaces provided to serve rehabilitation facilities specializing in treating conditions that affect mobility and outpatient physical therapy facilities must be accessible.
- Parking space width 8' min.
- Access aisle width 5' min.

**VAN PARKING SPACES**
- Van Parking space width: 11' min. where access aisle is a min. of 5' wide.
- Van parking spaces are be permitted to 8' wide min. where the access aisle is a min. of 8' wide.
- Number of Van Accessible Spaces: For every 6 or fraction of 6 accessible parking spaces at least 1 must be a van accessible parking space.

**LOADING AND UNLOADING ACCESS AISLE**
- Access aisle min. dimensions: 5' wide x full length of parking space.
- Access aisles must be marked so as to discourage parking in them.
- The method and color of marking are not specified by these requirements but may be addressed by State or local laws or regulations.
- Access aisles must be permitted to be placed on either side of the parking space except for angled or van parking spaces which must have access aisles located on the passenger side of the parking spaces.
- Two parking spaces are permitted to share a common access aisle.
- Access aisles must not overlap the vehicular way.
- Access aisles must adjoin an accessible route.

| **PARKING SPACES*** | |
| Total Number of Parking Spaces in Parking Facilities | Minimum Number of Required Accessible Spaces |
| --- | --- |
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |
| 301 to 400 | 8 |
| 401 to 500 | 9 |
| 501 to 1,000 | 2% of total |
| 1,001 and over | 20 plus 1 for each 100 or fraction thereof over 1,000 |

*ADA Table 208.2

**APPLICABLE TO ALL ACCESSIBLE PARKING SPACES**
- Surface slope within accessible parking spaces: 2% (1:48) max. in any direction.
- Accessible parking spaces must be located on the shortest accessible route from parking to an accessible entrance.
- Parking spaces and access aisles must be designed so that cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes.
- In parking facilities where the accessible route must cross vehicular traffic lanes, marked crossings enhance pedestrian safety particularly for people using wheelchairs and other mobility aids.
- Accessible route must not pass behind parked vehicles whenever possible.
- Curb ramps are not permitted to project into access aisles and parking spaces.
- Wheel stops are an effective way to prevent vehicle overhangs from reducing the clear width of accessible routes.
- Parking spaces, access aisles and vehicular routes serving them must provide a vertical clearance of 98" min.
- Accessible signage must be provided at accessible parking spaces.
- Detectable Warning surfaces must be provided at curb ramps.

*ADA 208; 50*

### ENTRANCE

k.  This property fails to comply with: *entrance ramp does not comply with the 1:12 gradient. Requirement. A* 1:12 ramp slope ratio, which equals 4.8 degrees slope or one foot of wheelchair ramp for each inch of rise, is not provided. Here, a 10 inch rise requires a 10 foot accessible wheelchair ramp.

l.  This property fails to comply with: *handrails of ramp*. The handrails are not between 34" and 38" in height on both sides of the wheelchair ramps.



### SERVICE AND SALES COUNTER

m.  The interior of the Facility has sales and services counters lacking any portion of the counter that has a maximum height of **36 inches from the finished floor** in violation of section 904.4 of the 2010 ADAAG regulations, all portions of the sales and service counter exceed 36 inches in height from the finished floor. This violation made it difficult for Plaintiff to properly transact business at the Facility.

n.  Providing **counter heights exceeding 36 inches** making it impossible or unnecessarily difficult to service a disabled person pursuant to 2010 ADAAG §§ 904, 904.4, 904.4.1, 904.4.2

### RESTROOM

o.  Failure to provide **parts**, which are functional or are in the proper reach ranges as required for a disabled person. 2010 ADAAG secs. 309, 309.1, 309.3 and 309.4.

p.  Failure to provide the proper insulation or **protection for the plumbing under a sink or countertop** in violation of 2010 ADAAG secs. 606, 606.5.

q.  Providing **grab bars** of improper horizon lenth or spacing on the back or the side wall in violation of 2010 ADAAG secs. 604, 604.5, 604.5.1, 604.5.2, 609, 609.4.

r.  Failure to provide **mirror(s)** located above the lavatories or countertops at the proper height above the finished floor. 2010 ADAAG secs 603, 603.3.

s.  Failure to provide the **water closet in the proper position** relative to the side wall or partition in violation of 2010 ADAAG secs 604, 604.2.

t.  Failure to provide **signage for an accessible restroom** or failure to redirect a disabled person to the closest available accessible restroom facility in violation of 2010 ADAAG secs  216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5, and 703.2.1.

u.  Failure to provide **knee clearance** for a disabled person under a counter or sink element in violation of 2010 ADAAG secs 306, 306.1, 306.3.

v.  Failure to provide **toe clearance** for a disabled person under a counter or sink element in violation of 2010 ADAAG secs 306, 306.1, 306.2, 306.2.1.

w.  The lavatories and/or sinks in the restrooms have **exposed pipes** and surfaces and are not insulated or configured to protect against contact in violation of section 606.5 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

x.  The sink hardware has operable parts which require **tight grasping, pinching or twisting of the wrist** in violation of section 309.4 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to utilize the restroom facilities

y.  The accessible **toilet stall door is not self-closing** and/or otherwise violates section 604.8.2.2 of the 2010 ADAAG standards. This made it difficult for the Plaintiff to safely utilize the restroom facilities.

z.  The Facility lacks **restrooms signage** in compliance with sections 216.8 and 703 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to locate accessible restroom facilities.

aa. There is inadequate **clear turning space** in the stall in violation of section 603.2.1 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

bb. There is a **vertical rise** exceeding ½ inch at the **threshold to the door** leading to the restrooms in violation of section 404.2.5 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

cc. Failure to provide the minimum required **circular turning clearance** for a disabled person due to a wall or some other obstruction that does not comply with standards 2010 ADAAG §§ 304, 304.3, 304.3.1, 603, 603.2 and 603.2.1.

dd. Providing **grab bars of improper horizontal length or spacing** on the back or side wall pursuant to 2010 ADAAG §§ 604, 604.5, 604.5.1, 604.5.2, 609, 609.4.

ee. Failure to provide **grab bars at 33 inches minimum and 36 inches maximum** above the finish floor measured to the top of the gripping surface pursuant to 2010 ADAAG §§ 604, 609, 609.4.

ff. Failure to provide **mirror(s)** located above lavatories or countertops at the proper height above the finished floor 2010 pursuant to ADAAG §§ 603, 603.3.





## R  LAVATORIES

- Clear Floor Space: 30" Min. x 48" Min.
- If a min. of 9" height of toe clearance is provided, a max. of 6" of the 48" clear floor space may extend into space.
- Horizontal Depth: 17" Min. to 25" Max.
- Lavatory Height: 34" Max.
- Faucets must be operable with one hand and must not require tight grasping, pinching or twisting of the wrist.
- The force required to activate operable parts must be 5 lbs. max.
- Hand-Operated Metering Faucets Opening Duration: 10 secs. min.
- Force to Operate Faucets: 5 lbs. max.
- Exposed Pipes and Surfaces: Water supply and drain pipes under lavatories must be insulated or otherwise configured to protect against contact.
- There must be no sharp or abrasive surfaces under lavatories.

*ADA 606; 305; 306; 309*

## WHEELCHAIR ACCESSIBLE COMPARTMENT

### COMPARTMENT CLEARANCE

- Clearance around a water closet must be 60" min. measured perpendicular from the side wall and 56" min. measured perpendicular from the rear wall.
- Wheelchair accessible compartments must be 60" wide min. measured perpendicular to the side wall, and 56" deep min. for wall hung water closets and 59" deep min. for floor mounted water closets measured perendicular to the rear wall.
- The required clearance around the water closet must be permitted to overlap the water closet, associated grab bars, dispensers, sanitary napkin disposal units, coat hooks, shelves, accessible routes, clear floor space and clearances required at other fixtures, and the turning space.
- No other fixtures or obstructions must be located within the required water closet clearance.

### APPROACH

- Compartments must be arranged for left-hand or right-hand approach to the water closet.

### TOE CLEARANCE

- The front partition and at least one side partition must provide a toe clearance of 9" min. above the finish floor and 6" deep min. beyond the compartment-side face of the partition, exclusive of partition support members.



*ADA 604.3; 604.8; 404.2.7*



# (S) RESTROOM SIGN LOCATION

60" Max. 48" Min. Center of Sign

Finish Floor

48" Min. 60" Max.

Wall signage to be installed on the latch side of door

Pictogram

Lettering
• Upper case characters
• Raised 1/32"

6" Min.

Grade 2 Braille

Height of lettering 5/8" Min. to 2" Max.

- Tactile characters on signs must be located 48" min. above the finish floor or ground surface, measured from the baseline of the lowest tactile character and 60" max. above the finish floor or ground surface, measured from the baseline of the highest tactile character.
- Where a tactile sign is provided at a door, the sign must be located alongside the door at the latch side.
- Where a tactile sign is provided at double doors with one active leaf, the sign must be located on the inactive leaf.
- Where a tactile sign is provided at double doors with two active leafs, the sign must be located to the right of the right hand door.
- Where there is no wall space at the latch side of a single door or at the right side of double doors, signs must be located on the nearest adjacent wall.
- Signs containing tactile characters must be located so that a clear floor space of 18" min. x 18" min., centered on the tactile characters, is provided beyond the arc of any door swing between the closed position and 45° open position.

*ADA 703.4.1; 703.4.2*



**ACCESSORIES**

**MIRRORS**
- Mirror Height – When Located Above Lavatories or Countertops: 40" max. above the finish floor or ground measured to the bottom edge of the reflecting surface.
- Mirrors Height - When Not Located Above Lavatories or Countertops: 35" max. above the finish floor or ground measured to the bottom edge of the reflecting surface.
- Mirror Height - Full-Length: 74" min. measured from the floor or ground to the top edge of mirror.

**HOOKS, SHELVES & CABINETS**
- Coat Hooks Height: 15" Min. and 48" Max.
- Shelves Height: 40" min. and 48" max. above the finish floor.

**SOAP & TOWEL DISPENSERS**
- Operable Parts Height: 48" Max. above finish floor.
- Locate soap and towel dispensers so that they are conveniently usable by a person at the accessible lavatory.
- Electrical Receptacles: 15" Min. to 48" Max. above finish floor/ground.

*ADA 603.3-603.4, 308; 606.1*

# T GRAB BARS



Rear Grab Bar     Grab Bar Dimensions

## CROSS SECTION

- Circular Cross Section Outside Diameter: 1¼" min. and 2" max.
- Non-Circular Cross Section Dimension: 2" max.
- Non-Circular Perimeter: 4" min. and 4.8" max.

## SPACING

- Space between the wall and the grab bar: 1½"
- Space between the grab bar and projecting objects below and at the ends: 1½" min.
- Space between the grab bar and projecting objects above: 12" min.

## POSITION OF GRAB BARS

- Installation Position: Horizontal
- Installation Height: 33" min. and 36" max. above the finish floor measured to the top of the gripping surface.
- Grab bars must be installed in any manner that provides a gripping surface and that does not obstuct the required clear floor space.

## SURFACE, FITTINGS & STRUCTURAL STRENGTH

- Grab bars and any wall or other surfaces adjacent to grab bars must be free of sharp or abrasive elements and must have rounded edges.
- Grab bars must not rotate within their fittings.
- Structural Strength: 250 lbs.

ADA 609

17.     To the best of Plaintiff's belief and knowledge, the Defendant has failed to eliminate the specific violations set forth in paragraph 16.

18.     To the best of Plaintiff's belief and knowledge, the Defendant has failed to eliminate the specific violations set forth in paragraph 16.

19.     Plaintiff has attempted to gain access to the Facility and/or Property in his capacity as a customer, but because of his disability has been denied access to, and has been denied the benefits of services, programs, and activities of the Facility and/or Property, and has otherwise been discriminated against and damaged by Defendants, because of the physical barriers, dangerous conditions and ADA violations set forth above, and expect to be discriminated against in the near future by Defendants because of Plaintiff's disabilities, unless and until Defendants are compelled to remove unlawful barriers and conditions and comply with the ADA.

20.     All of the above violations are readily achievable to modify in order to bring the Facility/Property into compliance with the ADA as the modifications can be easily accomplished and are able to be carried out without much difficulty or expense. 42 U.S.C.12182 (b)(2)(A)(iv); 42 U.S.C. 12181(9); 28 C.F.R. 36.304.

21.     Upon information and belief the Defendant has the financial resources to make the necessary modifications.

22.     Upon information and belief the Property has been altered since 2010.

23.     In instances where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 16 can be applied to the 1991 ADAAG standards.

24.   Plaintiff is a frequent visitor of the area where Defendant's property is located, as her home is near to the Subject Facility.

25.   As alleged in paragraph 3, Plaintiff visited the property which forms the basis of this lawsuit and at that time and place, she encountered the discriminatory violations described in paragraph 16.

26.   As an individual with limited mobility, Plaintiff has a keen interest in whether public accommodations have architectural barriers that impede full accessibility to those accommodations by individuals with mobility impairments.

27.   Plaintiff plans to return to the property to avail herself of the goods and services offered to the public at the property and to determine whether the property has been made ADA compliant.

28.   As detailed in paragraph 16, Plaintiff has encountered barriers at the subject property which discriminate against her on the basis of his disability.

29.   In the alternative, Plaintiff is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA.

30.   Plaintiff should not be discouraged from pointing out public accommodations that are breaking the law. From 1991 to 2015, 25 years, there was no meaningful enforcement of the Title II/III of the ADA in Puerto Rico, and the results are obvious: architectural barriers everywhere. Tester standing is imperative to ensure that the rights guaranteed by the ADA do not become meaningless abstractions.

31.   Many people are reluctant to bring lawsuits against businesses for violations of the ADA or are unaware of what constitutes a violation under a very cumbersome and technically detailed statute. Other victims of ADA violations may not have the incentive or the resources to bring ADA lawsuits.

32.   Thus testers, as private attorneys general, serve a vital role in redressing the injuries suffered due to violations of Title III of the ADA. Overall, denying relief to individuals who prove they were victims of discrimination, even as testers, weakens and undercuts congressional intent to deter and remedy discrimination through utilization of private individuals to enforce the statute.

33.   In fact, the Supreme Court supported the idea of private attorneys general in the employment context, stating: "We have rejected the unclean hands defense `where a private suit serves important public purposes.' Plaintiff plan to return to the property as a "tester" for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA. As civil right activist, Plaintiff intent to return to the Subject Facility to verbally and face-to-face demand ADA compliance to Defendant's manager's within six months. Plaintiff's "undisputed tester motive behind his plan to return does not defeat standing." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013); *See also* Colorado Cross Disability Coal v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211 (10th Cir. 2014); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1332 (11th Cir. 2013); D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1040 (9th Cir. 2008); see also Steelman v. City of Salem, No. 4:12-CV-00191, 2013 WL 1363792, at 4 (E.D. Mo. Apr. 4, 2013); Betancourt v. 2 Combs Enterprises, Inc., No. 10-3364-CV-S-MJW, 2011 WL 846849, at

*3 (W.D. Mo. Mar. 8, 2011). As the Eighth Circuit and other appellate courts have recognized, private litigation serves as an important means to enforce the public policy behind civil rights statutes such as the ADA and serial litigants serve a valuable purpose as private attorneys generals ensuring that the ADA yields its promises of equal access to disabled persons. See Shaver v. Indep. Stave Co., 350 F.3d 716, 724-25 (8th Cir. 2003) (citing Kyles v. J.K. Guardian Sec. Servs., Inc., 222 F.3d 289, 299 (7th Cir. 2000); see also Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007); Bruce v. City of Gainesville, Ga., 177 F.3d 949, 952 (11th Cir. 1999); Suarez-Torres v. Borinquena Metro, Civil No. 16-1609 (DRD) (Docket No. 12); Suarez-Torres et al v. Restaurantes Fridas, Inc., Civil No. 16-1912 (FAB) (CVR) (Docket No. 12).

34.    The violations present at Defendant's facility create a hazard to Plaintiff's safety.

35.    Plaintiff is continuously aware of the violations at Defendant's facility and is aware that it would be a futile gesture to return to the property as long as those violations exist unless he is willing to suffer additional discrimination.

36.    The remedial provision of Title III states that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). In the legislative history of the ADA, Congress noted that the "futile gesture" doctrine was set forth in the case of International Bhd. of Teamsters v. United States, 431 U.S. 324 (1977). See H.R. Rep. 101-485(II), 101st Cong., 2d Sess. at 82-83, reprinted in 1990 U.S.C.C.A.N. 303, 365.  ADA – like the Equal Protection Clause, Title VII and the Fair Housing Act – prohibits a certain type of discrimination. And as is the case with the Equal Protection Clause, Title VII and the Fair

Housing Act, injury under the ADA consists of the discrimination -- in and of itself -- that deprives the plaintiff of the opportunity to obtain a benefit rather than the lack of the benefit itself. Thus, to impose liability under Title III, *the barrier does not need to completely preclude plaintiff from entering or using the facility*; it need only interfere with the plaintiff's full and equal enjoyment of the facility. See Moeller v. Taco Bell Corp., 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing 1183*1183 Doran v. 7-Eleven Inc., 524 F.3d 1034, 1041 n. 4 (9th Cir.2008) (discussing that the ADA **"does not limit its antidiscrimination mandate to barriers that completely prohibit access**.")). "Because the ADAAG establishes the technical standards required for `full and equal enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will **impair the plaintiff's full and equal access, which constitutes `discrimination' under the ADA, thereby violating the ADA**." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir.2011). Here, the odds of the injury occurring again are certain where the building is not in compliance with the ADA and the Plaintiff and every other person with the same disability is going to confront the same barrier on every future visit. Second, the Plaintiff have an actual and present injury i.e. being deterred from visiting the building because he is at-all-times aware of the barriers at the Subject Facility. Third, Plaintiff is deterred from patronizing the Subject Facility and suffer the ongoing actual injury of not being able to access that Store/Subject Facility. Finally, the risk of injury in fact is not speculative because the discriminatory barriers or policies remain in place, the Plaintiff remain disabled, and the Plaintiffs are able and ready to visit the facility once it is made ADA compliant.

37.     A number of courts have rejected the "intent to return" or "likely to return" theory as the only way to demonstrate standing for injunctive relief on the grounds that "the odds of the injury recurring are certain where a building is not in compliance with the ADA" and any person "with the same disability" will face the same barrier on any visit. Instead, some courts, including the First Circuit, apply the "deterrent effect doctrine," which holds that an individual suffers an injury-in-fact sufficient to confer standing if he is deterred from visiting a public accommodation because it is not in compliance with the law; plaintiffs need not engage in the "futile gesture" of returning to a building with known barriers that the owner does not intend to remedy. As you know, the deterrence effect theory is grounded in language of the ADA stating that a plaintiff does not have to "engage in a futile gesture if such person has actual notice that a person or organization does not intend to comply" with the statute. Hunter II, 2013 WL 4052411, at *3, quoting 42 U.S.C. § 12188(a)(1). See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939, 949-50 (9th Cir. 2011)("Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."); Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir.2005) ("`[A] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA' and `who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA' suffers actual or imminent harm sufficient to confer standing."); Steger v. Franco, 228 F.3d 889, 892 (8th

Cir.2000) ("Although plaintiffs need not engage in the `futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying... they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."); Hunter II,2013 WL 4052411, at *3 ("The second recognized way to establish injury-in-fact is for the 584*584 plaintiff to show that he is continually injured by being deterred from making use of the allegedly noncompliant public accommodation.... `[A] plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store.'"); Betancourt v. Federated Dep't Stores, 732 F.Supp.2d 693, 709 (W.D.Tex.2010) ("[T]he Supreme Court recognized deterrence as an injury in fact sufficient to confer standing for prospective relief in Friends of the Earth, Inc. v. Laidlaw Envt'l Services, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)"; "[T]he risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is `able and ready' to visit the facility once it is made compliant. If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made compliant."). See also Fiedler v. Ocean Props., Ltd., 683 F.Supp.2d 57, 69 (D.Me.2010); Scherr v. Marriot Intern., Inc., 833 F.Supp.2d 945, 952-53 (N.D.Ill.2011) (Noting that the "`deterrent effect doctrine'-supported by the reasoning of the Ninth, Eighth and First Circuits is gaining support" and applying it) (citing Betancourt). In Kramer v. Lakehills South, LP, No. A-13-CA-591 LY, 2014 WL 51153, at *4 (W.D.Tex. Jan. 7, 2014), the district court applied the deterrent effect doctrine and observed: "[t] he Fifth Circuit appears to have endorsed this theory in Frame v. City of Arlington, 657 F.3d 215, 236 (5th Cir., 2011) (a Title II ADA case),cert. denied, ___ U.S. ___, 132 S.Ct.

1561, 182 L.Ed.2d 168 (2012),when it stated that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way.".

38.   The violations present at Defendant's facility infringe Plaintiff's right to travel free of discrimination. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's facility.

39.   By continuing to operate a place of public accommodation with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public.

40.   By encountering the discriminatory conditions at Defendant's facility, and knowing that it would be a futile gesture to return unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting the same accommodations readily available to the general public and is deterred and discouraged from additional travel. By maintaining a public accommodation with violations, Defendant deprives plaintiff the equality of opportunity offered to the general public.

41.   Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA.

42.   Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 16 of this Complaint.

43. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

44. Plaintiff desires to visit the subject facility not only to avail herself of the goods and services available at the property but to assure herself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

45. The Defendant has discriminated against the Plaintiff by denying her access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the subject property, as prohibited by 42 U.S.C. § 12182 et seq.

46. The discriminatory violations described in paragraph 16 are not an exclusive list of the Defendant's ADA violations.

47. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

48. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

49.     In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

50.     Defendant has discriminated against the Plaintiff by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

51.     Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

52.     Plaintiff is without adequate remedy at law and is suffering irreparable harm.

53.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

54.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the subject facility to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or limited mobility;

B. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C. Payment of costs of suit;

D. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

E. The provision of whatever other relief the Court deems just, equitable and appropriate.

### RESPECTFULLY SUBMITTED,

**/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
**USDC-PR NO.: 231014**

jcvelezcolon@gmail.com

PO BOX 2013
BAYAMON PR 00960

TEL: (787) 599-9003

*Attorney for*
*Esther Caraballo Rivera*

**Americans with Disabilities Act**
ACCESSIBILITY-RELATED LITIGATION

JOSÉ CARLOS VÉLEZ COLÓN, ESQ.
JCVELEZCOLON@GMAIL.COM

P.O BOX 2013
BAYAMÓN, PR 00960

TEL.: (787) 599-9003